<hr/>

23708

RICHLAND COUNTY SCHOOL DISTRICT ONE, Appellant v. RICHLAND COUNTY COUNCIL; Harry Huntley, in his official capacity as Auditor of Richland County; and Nenie Paskey, in her official capacity as Treasurer of Richland County, Respondents.

(425 S.E. (2d) 747)

Supreme Court

*Kenneth L. Childs* and *David T. Duff,* both of *Childs & Duff, P.A.,* Columbia, *for appellant.*

*Ronald M. Childress* of *Office of the County Atty.,* Columbia, *for respondent Richland County Council.*

*David B. Summer, Jr.* of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *for respondents Harry Huntley* and *Nenie Paskey.*

Heard Aug. 26, 1992.

Decided Aug. 31, 1992.

*Per Curiam:*

Appellant Richland County School District One (District) asks this Court to issue a writ of supersedeas. After hearing extensive arguments from the parties, it is clear this case involves legal questions which can be resolved with the record currently before this Court. Therefore, because of the need to resolve this matter in an expeditious manner, we have decided to reach the merits of this appeal at this time.[1] We affirm in part and reverse in part.

## FACTS

In 1992, for the first time, District and Richland County Council (County) will receive funds from the Union Camp Corporation through a fee-in-lieu of taxes agreement reached between County and Union Camp in 1988 as authorized by S.C. Code Ann. § 4-29-67 (Supp. 1991). On May 12, 1992, District submitted to County its 1992-93 General Fund Budget and Debt-Service Budget. In submitting this budget, District requested an "allocation" from County in the amount of $59,131,047, which included $56,947,651 in property taxes. After considering the budget request, County appropriated $58,362,500, which included $51,842,936 in property taxes.

District then brought suit, seeking declaratory and injunctive relief against County, Harry Huntley (Auditor), and Nenie Paskey (Treasurer) for allegedly underfunding District for fiscal year 1992-93 (FY 93). By Answer and Counterclaim, County denied District's claims and sought repayment or a credit for approximately $12,000,000 allegedly obtained by District through false representations of annual local effort as mandated by the South Carolina Education Improvement Act (EIA), S.C. Code Ann. § 59-21-1020 (Supp. 1991). By Answer, Auditor and Treasurer admitted that County's FY 93 appro-

---

[1] The matter has been fully briefed and extensive oral argument has been presented by all parties.

priation failed to satisfy the statutory requirements of the EIA, and specifically denied the remaining allegations.

After an expedited trial was held, the trial judge denied relief on all causes of action, except the fourth, which concerned the EIA funding. On that cause of action, the trial judge granted partial relief to District, but failed to award the full amount of its budget request. On the counterclaim, the trial judge ruled for District.

District has presented basically three issues for determination by this Court, which are discussed below.

Issue I: Does Section 2 of Act No. 280, 1979 S.C. Acts 975, grant fiscal autonomy to District?

At trial, District sought a declaration that Act No. 280, 1979 S.C. Acts 975, grants fiscal autonomy to Richland County School Districts 1 and 2. Act 280, Section 2, states in its entirety:

> Notwithstanding any other provision of law, no uniform countywide tax levy for school purposes for Richland County shall be levied after the tax year 1978. Instead, the school tax levy for Richland-Lexington School District 5 shall be determined by the board of trustees thereof and the school tax levy for Richland County School Districts 1 and 2 *shall* be determined by the Richland County Council based on the requirements of the South Carolina Education Finance Act of 1977 [EFA] and based on any other additional funding deemed necessary by the *board or* county council. [Emphasis added.]

District contends that the language emphasized above implies a grant of fiscal autonomy to Districts 1 and 2 to the extent that their Boards of Trustees may compel a tax levy for any other additional funding they deem necessary independent of any action or approval by County. We disagree.

The plain and simply language of the statute indicates that the phrase "the board" refers to the board of trustees of Richland-Lexington School District 5, the only board specifically mentioned within the section. Further, as to the constitutional arguments raised by District, these issues were not ruled upon by the trial judge. Therefore, they are not properly before this Court. *See Talley v. South Carolina Higher Educa-*

*tion Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (issues raised below but not ruled on by the trial judge are not preserved for appellate review).

Accordingly, we conclude that the trial judge was correct in holding that Act 280, Section 2, does not grant fiscal autonomy to District.

Issue II. Did the trial court, as well as County, properly reject District's calculation of its FY 93 EIA requirement?

District complains that County's appropriation of ■ $58,362,500 falls short of the projected EIA minimum local effort for FY 93, estimated by the South Carolina Department of Education (Department) to be $59,394,832.80. It contends that neither County, Auditor nor the trial court can deviate from this estimate under this Court's holding in *Laurens County School Districts 55 and 56 v. Cox*, — S.C. —, 417 S.E. (2d) 560 (1992).

S.C. Code Ann. § 59-21-1030 (Supp. 1991) states, in pertinent part:

> [S]chool district boards of trustees or other governing bodies of school districts shall maintain *at least* the level of financial effort per pupil for non-capital programs as in the prior year adjusted for an inflation factor estimated by the Division of Research and Statistical Services. The county auditor shall establish a millage rate so that the level of financial effort per pupil for non-capital programs adjusted for an inflation factor estimated by the Division of Research and Statistical Services is maintained as a minimum effort. No school district which has not complied with this section may receive funds under the South Carolina Education Improvement Act of 1984 Fund. [Emphasis added.]

The parties agree that Department's calculation of the minimum local effort was based on estimates submitted by District. District also concedes that despite decreasing enrollment, it has projected increases in its ADM.[2] District, however, contends that its estimates have been actually less than 1% over the actual ADM.

---

[2] Average Daily Membership of 135 days.

Auditor and Treasurer acknowledged at trial, and at oral argument, that County's appropriation to District for FY 93 falls short of the minimum local effort mandated by the EIA. Therefore, Auditor submitted his own calculation of the minimum local effort based on his independent calculation of the ADM. The trial judge accepted Auditor's estimate, $58,894,288, concluding that he acted reasonably in making an independent calculation of the ADM for purposes of calculating the minimum local effort.

District contends that the trial judge acted improperly in rejecting its calculation of its FY 93 EIA requirements as reported by Department, and adopting the Auditor's independent calculation. We agree.

Section 59-21-1030 requires the District to maintain *at least* the level of financial effort per pupil as in the prior year adjusted for an inflation factor. Auditor is required to set millage so that the minimum effort per pupil is generated. If the interpretation proposed by County, Auditor, and Treasurer were adopted, Auditor would have the authority to "cut back" the required local effort so as to equal only the minimum amount necessary. This would have the effect of reading out the "at least" in the first sentence of the section. It is the duty of this Court to give all parts and provisions of a legislative enactment effect and reconcile conflicts if reasonably and logically necessary. *Adams v. Clarendon County School District No. 2*, 270 S.C. 266, 241 S.E. (2d) 897 (1978).

In our opinion, the only logical reading of the first two sentences of § 59-21-1030 to avoid this conflict is that the Board shall set the rate *at least* as high as the minimum local effort, and Auditor may adjust this rate *only* if he determines the rate is below the minimum required. Therefore, Auditor may not unilaterally reduce the amount set by Board to the minimum, as he has done here. This is consistent with *Cox, supra*, in which the Court stated that "the clear meaning and purpose of the statute [is] to provide a minimum, not a maximum, financial effort by school districts." 417 S.E. (2d) at 561.

Accordingly, we find that the trial judge erred in adopting Auditor's calculation of the minimum local effort. We hold that § 59-21-1030 requires County to appropriate the projected EIA minimum local effort as submitted by District and reported by Department.

Issue III. Did County treat the Union Camp fee-in-lieu of taxes differently for District's budget and levy purpose than it did for its own budget and levy purpose?

■■ District alleges that County has violated S.C. Code Ann. § 4-29-67(C) (Supp. 1991). This section states:

> Distribution of the payment in lieu of [property] taxes on the project must be made in the same manner and proportion that the millage levied for school and other purposes would be distributed if the property were taxable. Millage rates must be determined for school and other purposes as if the property were taxable.

District alleges that this section was violated in that, upon third reading of the budget, County treated its share of the Union Camp fee, $1,907,667 as "other source" revenue, while refusing to do the same for District's share, $4,815,363. The trial judge found that the fees-in-lieu were treated in the same manner for both District and County.

We disagree with th trial judge. From the documentary materials presented before us, it appears that these amounts were not treated in a similar manner, thus resulting in an improper skewing of the parties' respective millage rates.

The real problem, however, is that the parties fail to understand the nature of fees-in-lieu of taxes. Under § 4-29-67(C), fees-in-lieu are to be treated in the same manner as property taxes, and are to be distributed among school district and other purposes in proportion to their respective property tax millage. Contrary to what has occurred in this case, the parties' respective shares of the fees-in-lieu of taxes cannot be determined until after the millage is determined. Only after the respective millage rates are established for each county entity entitled to a portion of the Union Camp fee-in-lieu of taxes can the apportionment of this fee be determined. Section 4-29-67(C) requires that the fee be apportioned according to the percentage each participating entity's millage bears to the sum of all participating entities' millages.

Accordingly, we affirm in part and reverse in part. County is directed to recalculate District's budget appropriation in a manner not inconsistent with this opinion.

Affirmed in part and reversed in part.